## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JAMES T. HORSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 3008 |
| | ) |
| DAVE EIFERT, DEPUTY SHERIFF OF | ) Judge Rebecca R. Pallmeyer |
| DUPAGE COUNTY, INDIVIDUALLY AND | ) |
| AS AN AGENT/DEPUTY OF THE DUPAGE | ) |
| COUNTY SHERIFF'S OFFICE, JOHN | ) |
| ZARUBA, SHERIFF OF DUPAGE COUNTY, | ) |
| IN HIS OFFICIAL CAPACITY AS AN AGENT | ) |
| OF DUPAGE COUNTY SHERIFF'S OFFICE, | ) |
| DUPAGE COUNTY, A MUNICIPAL | ) |
| CORPORATION, AND ED SMITH, AN | ) |
| INDIVIDUAL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On December 25, 2002, Plaintiff James T. Horsley was brutally beaten and sexually assaulted by another inmate, Defendant Ed Smith, while imprisoned at the DuPage County Jail. Plaintiff alleges that Defendant Dave Eifert, a DuPage County deputy sheriff, allowed Smith to enter the area of the jail where Plaintiff was held while Plaintiff was outside his cell, in violation of jail policy. Plaintiff's four-count amended complaint alleges: (1) deliberate indifference against Defendant Eifert (Count I); (2) failure to train against Defendant John Zaruba, DuPage County Sheriff (Count II); (3) a state law assault and battery claim against Defendant Smith (Count III); and (4) a *respondeat superior* claim against DuPage County (Count IV). On April 1, 2004, this court dismissed Count IV. Defendants Zaruba and Eifert now move for summary judgment on Counts I and II. For the reasons discussed here, the court grants Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

The relevant facts, based on the parties' Local Rule 56.1 statements and attachments, are as follows.

On or about June 21, 2002, Plaintiff was first imprisoned at the DuPage County Jail. Defs.' LR 56.1 Stmt. ¶ 1. Sometime in August 2002, (the record does not disclose precisely when), Plaintiff was placed in the "B-pod" located in the "administrative lockdown" portion of the jail.[1] *See* Am. Compl. ¶ 10. The lockdown area, located on the first floor of the jail, consists of twenty-six cells divided into three zones, or "pods:" A-pod, B-pod (the disciplinary pod, where Plaintiff was first transferred from the jail's general population) and C-pod. Defs.' LR 56.1 Stmt. at ¶¶ 21–22; *see also* Eifert Dep., Ex. B to Defs.' LR 56.1 Stmt., at 33. There are also twenty-one "receiving" cells on the same floor. *Id.* at ¶ 21; Eifert Dep. at 33. Both the "pods" and the receiving cells house inmates apart from the general population of the jail, which is housed on the floors above the lockdown area. *See* Defs.'s Reply to Pl.'s Response to Rule 56.1(a)(3) Statement of Uncontested Material Facts and Additional Facts Pursuant to Rule 56.1(b)(3), at ¶ 1; Eifert Dep. at 33. When Plaintiff's disciplinary time expired, he was permitted to remain in "lockdown" at his own request—in order (he alleges) to "concentrate on maintaining his sobriety and focus on his rehabilitation," Am. Compl. ¶ 10—and was eventually transferred to A-pod. Defs.' Answer ¶ 10. The entrance to A-pod opens into a small alcove, to the left of which is a shower area and a "dayroom"/bathroom. Defs.' LR 56.1 Stmt. ¶ 23. The dayroom contains two tables and a telephone. *Id.* Plaintiff occupied the cell (Cell 14A) furthest from the pod's only entrance, on the right-hand side. *Id.* at ¶ 22.

---

[1]     Plaintiff's complaint does not explain why Plaintiff was originally placed in lockdown. *See* Am. Compl. ¶ 10. Defendants assert that "Plaintiff was placed in segregation for fighting." Defs.' Answer ¶ 10.

2

Unlike the pod cells, the receiving cells—where Defendant Ed Smith was housed—lack telephones and shower facilities. *Id.* at ¶ 29. Accordingly, inmates in the receiving cells were taken to either A-pod or C-pod to shower. *Id.* at ¶ 30. For the safety of the inmates, Pl.'s LR 56.1 Stmt. ¶ 3, the jail had a policy of permitting only one inmate at a time out of his cell to use the shower or the telephone. Defs.' LR 56.1 Stmt. ¶ 24. Pursuant to the jail's general practice, an inmate's time spent outside his cell to use the shower or telephone was usually limited to two "clock rounds": fifteen minute periods during which time the supervising deputy checks on the other inmates in the jail. *Id.* at ¶ 25; Eifert Dep. at 46. While this inmate is in the pod's common shower/dayroom area, the other inmates in the pod are locked in their cells. Eifert Dep. at 43. Each pod has a "detex" clock, which the deputy "hits" as he visits each pod on his round to verify that he has completed his inspection and when. Eifert Dep. at 47, 49. This cycle continues throughout the deputy's shift. *Id.* at 49. When the deputy returns for a second time to the pod where he released the inmate, he locks the inmate back into his cell. *Id.* at ¶ 40.

Although Plaintiff and Defendant Smith were housed in segregated areas of the jail, they were able to interact during Smith's visits to A-pod. *See* Eifert Dep. at 60–61. In his deposition, Plaintiff estimated that he had spoken with Smith between 10 and 20 times prior to December 25, 2002. Horsley Dep., Ex. A to Defs.' LR 56.1 Stmt., at 29. Plaintiff conceded that he never had any physical contact with Smith, and that the two never had any "verbal altercations." Defs.' LR 56.1 Stmt. ¶¶ 59–60. On one occasion in or about September 2002, however, Defendant Smith threatened Plaintiff while Plaintiff was in his own cell. Horsley Dep. at 107. Plaintiff did not report this incident to Eifert or anyone else at the jail, *id.* at 108, and Eifert testified that he did not observe anything unusual during Smith's previous trips to A-pod. Defs.' LR 56.1 Stmt. ¶¶ 61, 63. Prior to the attack on December 25, 2002, all of Plaintiff's interaction with Smith in A-pod occurred while Plaintiff was secured in his cell. Defs. LR 56.1 Stmt. ¶ 64; *see also* Eifert Dep. at 43.

Defendant Eifert is a DuPage County deputy sheriff, responsible for, among other duties,

3

performing clock rounds in the lockdown area of the jail. Defs. Rule 56 Stmt. ¶ 36. Eifert has worked at the DuPage County Jail for all of his nine years as a deputy sheriff. *Id.* at ¶ 8. On his first day of orientation at the jail, the DuPage County Sheriff issued Eifert a "policies and procedures" manual, which Eifert testified had been revised and updated throughout his tenure as deputy. *Id.* at ¶ 15. Shortly after taking his position with the department, Eifert attended a mandatory, five-week correctional course administered by the State of Illinois. *Id.* at ¶ 11. Tests were administered at the end of each week, *see* Eifert Dep. at 20, and a final exam was administered at the end of the course; Defendant Eifert finished highest in his class. Defs.' LR 56.1 Stmt. ¶ 11. Eifert also received four weeks of on-the-job training with a training officer when he first took his position as deputy sheriff. *Id.* at ¶ 13. In addition, Eifert attends "roll call training": ten to fifteen minute lectures delivered by on-site training officers "almost every day." *Id.* at ¶ 22.

On December 25, 2002, Eifert allowed Plaintiff to leave his cell to use the shower. *Id.* at ¶ 37. After two clock rounds, Eifert returned to A-pod to clock his next round, but rather than locking Plaintiff back into his cell, Eifert permitted Plaintiff to remain in the common area because it was a holiday and Plaintiff wanted to make a phone call. *Id.* at ¶¶ 40–41.[2] Eifert then left A-pod to continue his clock rounds and to escort inmates to and from "booking chutes" where they were permitted to make phone calls. *Id.* at ¶ 42.[3] As Eifert was escorting these prisoners, he encountered Defendant Smith in his receiving cell, who asked Eifert for permission to use the shower. *Id.* at ¶ 43. Eifert testified that he had forgotten that Plaintiff had been allowed extra time outside his cell at the time he granted Smith's request. *Id.* at ¶ 44. Eifert escorted Smith through

---

[2]     Though neither party addresses the issue, Eifert and Plaintiff gave conflicting accounts of this exchange in their depositions. Eifert testified that Plaintiff requested extra time outside his cell to make the call, Eifert Dep. at 65, whereas Plaintiff testified that Eifert offered Plaintiff additional time and Plaintiff accepted. Horsley Dep. at 22.

[3]     Eifert testified that these telephone "chutes" are located in the receiving area of the jail and are used by inmates who are in the area only temporarily, until, for instance, "they post out or until they get classified to go upstairs." Eifert Dep. at 66, 72.

4

a windowed hallway connecting the receiving cells to A-pod. *Id.* at ¶¶ 46–47. As he walked past these windows with Smith, Eifert recalled, he did not see Plaintiff, nor did he notice that Plaintiffs' cell door was open. *Id.* at ¶¶ 47–48. Eifert escorted Smith into A-pod, then went to his desk to work on paperwork in another part of the Jail. *Id.* at ¶¶ 48–49.

Plaintiff testified in his deposition that he was in his open cell looking for a phone number when Smith arrived in A-pod. *Id.* at ¶ 52. According to Plaintiff's complaint, Smith entered Plaintiff's cell and began beating him with his fists and "what appeared to be a broomstick without any bristles." Am. Compl. ¶¶ 18–19. Smith beat Plaintiff unconscious, then sexually assaulted him in his cell. *Id.* at ¶ 21.

Approximately four to four-and-a-half minutes after escorting Smith to A-pod, Eifert's clock went off, indicating that it was time to begin his next clock round. Defs.' LR 56.1 Stmt. at ¶ 53. Eifert began by checking receiving cells 1–3, which took approximately 20 seconds, then moved on to A-pod. *Id.* When Eifert entered A-pod, he saw Smith holding a broken broomstick in his hand, which Eifert took from Smith before removing him from A-pod. *Id.* at ¶ 55.[4] Eifert testified that when he confronted Smith, he still did not recall that he had given Plaintiff extra time outside his cell: he thought that Smith may have tried to "break the glass in the pod" with the broomstick. *Id.* at ¶ 56. After Eifert escorted Smith to C-pod,[5] he checked the inmates in that pod, then returned to A-pod to check for property damage. Eifert Dep. at 81; Defs.' LR 56.1 Stmt. ¶ 57. Eifert saw Plaintiff standing at the doorway of his open cell, his nose bleeding. Defs.' LR 56.1 Stmt. ¶ 57. At that point, Eifert contacted a nurse and the other deputies on duty by radio. Eifert Dep. at 90.

---

[4] Plaintiff's complaint alleges that Smith stepped out of Plaintiff's cell when he heard "the sound of 'deputy's keys.'" Pl.'s Compl. ¶ 22.

[5] Eifert testified he took Smith to C-pod, rather than to his cell in the receiving area, because "I didn't have anyplace to put him at the moment." Eifert Dep. at 81. He did not explain why Smith's own cell in the receiving area was unavailable.

Plaintiff purports to "specifically den[y]" paragraphs 63–66 of Defendant's LR 56.1 statements, which concern Smith's previous visits to A-pod and whether Eifert's lack of knowledge that the attack was occurring. Plaintiff does not, as LR 56.1 requires, include "specific references to the affidavits, parts of the record, and other supporting materials relied upon." See LR 56.1(b)(3)(B); Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 817 (7th Cir. 2004) ("We have repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Even if the court were to overlook Plaintiff's noncompliance with LR 56.1, it is unclear, based upon the court's own examination of the record citations supporting the contested facts, what basis Plaintiff has to deny paragraphs 64–66.[6] Paragraph 64 states that, other than on December 25, 2002, Smith was never in A-pod while Plaintiff's or another inmate's cell door was open. Defs.' LR 56.1 Stmt. ¶ 64. Plaintiff himself so testified, see Horsley Dep. at 106, and there is no evidence to the contrary in the record. In paragraphs 64 and 65, Defendants assert that Eifert was unaware of the attack as it was occurring. Defs.' LR 56.1 Stmt. ¶ 64–65. This case would be a very different one if Eifert were aware of the attack, but did nothing to stop it. But Plaintiff did not make that allegation in his complaint, and there is nothing in the record to support that contention now. Paragraph 65 accurately reflects Plaintiff's own testimony that he did not know whether Eifert was aware of the attack at the time. See Horsley Dep. at 52. Likewise, paragraph 66 accurately reflects Eifert's testimony that the first inkling he had of the attack was seeing Plaintiff standing in the doorway of his cell, his nose bloodied. See Eifert Dep. at 81, 87, 89.[7]

---

[6] Paragraph 63 states that "[p]rior to December 25, 2002, there was nothing unusual about any of the times Smith was brought to A or C pod to shower." Defs.' LR 56.1 Stmt. ¶ 63. In the cited portion of the deposition transcript, Eifert testified only that he was not aware of anything unusual in Smith's previous trips to A-pod and C-pod. Eifert Dep. at 56. This may be the source of Plaintiff's objection, but any dispute in this regard is not material, as Eifert's liability under 42 U.S.C. § 1983 hinges on what Eifert actually knew, not what he should have known.

[7] The court notes that Plaintiff does not dispute paragraph 57, which contains language nearly identical to paragraph 66. Compare Defs.' LR 56.1 Stmt. ¶ 57 ("After returning (continued...)

6

## DISCUSSION

Summary judgment is appropriate when "the pleadings, admissions and other evidentiary materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Defendants contend that Eifert's conduct on the day that Smith attacked Plaintiff demonstrates, at most, negligence, not the intentional or criminally reckless conduct required to establish deliberate indifference. Defs.' Mem. at 9. Defendants further contend that Plaintiff has not refuted Eifert's testimony that he received "extensive training and supervision." *Id.* at 6. Indeed, Plaintiff appears to have abandoned his failure-to-train argument, as his opposition brief focuses exclusively on the deliberate-indifference claim. The court will address each of these arguments in turn.

### A. Deliberate Indifference

The Eighth Amendment protects prisoners from the deliberate indifference of prison officials to the prisoners' safety. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). This protection extends to "violence at the hands of other inmates." *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (quoting *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002)) (internal quotations omitted). A prison official may be liable for failing to protect an inmate only if he or she is aware of a substantial risk of impending harm and fails to take reasonable action to prevent it, though knowledge can be inferred from circumstantial evidence. *Id.* Mere negligence or even gross negligence with respect to the risk is insufficient. *Id.* "Rather, the corrections officer

---

[7](...continued)
to A pod after removing Smith and to check for property damage, Eifert first became aware that there was a problem when he went to hit the clock round in the back of A pod and noticed that Horsley's cell door was open and Horsley was standing in the doorway bleeding from the nose."), *with id.* at ¶ 66 ("Eifert was unaware of any altercation; the first time he realized there was a problem was after returning to A pod after removing Smith, when he hit the clock round in the back of A pod and noticed that Horsley's cell door was open and Horsley was standing in the doorway bleeding from the nose.").

7

must have acted with the equivalent of criminal recklessness." *Id. See also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

Plaintiff does not dispute that Eifert forgot that he had allowed Plaintiff additional time outside his cell before escorting Smith to A-pod, or otherwise suggest that Eifert's actions were dictated by something other than "inattentiveness." Pl.'s Opp'n at 5. Although Plaintiff insists that, "arguably," Eifert consciously ignored the risk that Smith might harm Plaintiff if placed in the same room without supervision, this conclusion is inconsistent with Eifert's undisputed testimony that he forgot that Plaintiff was outside his cell. That unchallenged showing is fatal to Plaintiff's claim for deliberate indifference. *See Chapman*, 241 F.3d at 846 (no deliberate indifference where defendants did not consciously disregard doctor's order concerning inmate's increased risk of injury). Even if, as Plaintiff contends, Eifert was aware that Smith had a "propensity for violence," (he was not),[8] it is undisputed that Eifert was not consciously aware that he had placed two inmates in the same common area. Plaintiff also argues that Eifert should have stepped further into A-pod with Smith to confirm that there were no other inmates in the common area. But at that time, Eifert had no reason to believe that there were any other inmates outside their cell: as he walked past the windows into A-pod he did not see Plaintiff or any other inmate in the common area. Eifert Dep. at 76–77. And he had forgotten that he had not locked Plaintiff back into his cell. *Id.* at 77. Consequently, he did not consciously disregard the risk that someone else might be free inside the pod.

Plaintiff points out that Eifert was not under any particular stress on the day of the attack,

---

[8]     Plaintiff testified that another, unidentified officer—not Eifert—told Plaintiff that Smith was held in a receiving cell "because of his violent behavior." Horsley Dep. at 108. When asked at his deposition whether Smith had a propensity for violence, Eifert testified that he was aware only that Smith was not permitted to use the telephone "because he kept calling the victim or the victim's family." Eifert Dep. at 55. The parties' Local Rule 56 materials do not disclose what crime Defendant Smith was serving time for committing.

8

and that only a few minutes elapsed between Eifert's granting Plaintiff additional time outside his cell and delivering Smith to A-pod. Pl.'s Opp'n at 4. This is further evidence that Eifert acted negligently, not that he acted with deliberate indifference. *See Hudgins v. Miller*, 62 F.2d 1419, 1995 WL 460579, \*2 (7th Cir. 1995) (dismissing plaintiff's complaint because it was based on an officer's negligence—forgetting to report inmate's injury to the prison infirmary—not deliberate indifference); *Brown v. Jennings*, No. 92 C 8137, 1993 WL 424243, \*3 (N.D. Ill. Oct. 19, 1993) (awarding defendant summary judgment on plaintiff's failure-to-provide-medical-care claim where officer negligently forgot to arrange for treatment in response to plaintiff's request).[9] Negligence is not enough. *Borello*, 446 F.3d at 747. Accordingly, the court dismisses Count II of Plaintiff's complaint.

### B. Failure to Train

Plaintiff's amended complaint alleges that Defendant Zaruba, in his official capacity as DuPage County Sheriff, failed to ensure that his deputies enforced the jail's polices and procedures. As previously discussed, Plaintiff makes no attempt to refute or even address Defendant's argument that Eifert has received extensive and continual training and supervision. The basis of Plaintiff's failure-to-train allegations appears to be that on one occasion one of Sheriff Zaruba's deputies failed to follow jail procedures. Short of hiring another deputy to look over Eifert's shoulder as he clocks his rounds, it is unclear what additional training or supervision would have averted the attack that took place on December 25, 2002. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (A plaintiff does not make out a failure-to-train claim by proving "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip

---

9   *See also Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987) ("If Campbell had told the prison staff that he was the target of a 'hit' and his cell should therefore be placed on 'deadlock' . . . and the staff misunderstood or forgot or inadvertently deadlocked the wrong cell or disbelieved him and got the time wrong, these facts might demonstrate negligence or even gross negligence but would not be 'punishment'" within the meaning of the Eighth Amendment.).

9

him to avoid the particular injury-causing conduct."). Moreover, "[a] failure to train theory . . . requires a finding that the individual officers are liable on the underlying substantive claim." *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). Having concluded that Defendant Eifert is not liable for deliberate indifference, Defendant Zaruba is entitled to summary judgment on Count II of Plaintiff's Amended Complaint.

## CONCLUSION

Defendants' motion for summary judgment (52) is granted. All claims against the DuPage County Defendants are dismissed. The court declines to exercise jurisdiction over the remaining state law claim against Defendant Ed Smith and dismisses that claim without prejudice to Plaintiff's pursuing that claim in state court.

ENTER:

Dated: June 23, 2006

Rebecca R. Pallmeyer

REBECCA R. PALLMEYER
United States District Judge

10